LEWIS A. DUNCKEL, Appellant, *v.* JOHN A. PARSONS et al., Respondents.

Third Department, December 29, 1948.

*Glenn F. Carter* for appellant.

*Albert S. De Clue* for Ruth Hollenbeck, respondent.

*George M. Skinner* for John A. Parsons and Julia N. Parsons, respondents.

RUSSELL, J. This is an appeal by the plaintiff from a judgment and order of the Supreme Court, entered July 21, 1948, in Chenango County Clerk's Office, dismissing the complaint herein and granting summary judgment in favor of the respondent, Ruth Hollenbeck.

A similar order and judgment were made on the same motion in favor of the defendants-respondents Parsons, but said order and judgment have not been entered as said defendants-respondents had counterclaimed in ejectment and noticed said counterclaim for trial, which trial has not been reached and is still pending.

The action is one to reform and modify two certain deeds, one from Grace P. Dunckel and the plaintiff to the defendant Ruth Hollenbeck, dated July 9, 1941, and the other from the defendant, Ruth Hollenbeck, to the defendants John A. Parsons and Julia N. Parsons, dated February 28, 1948, by reserving and excepting therein a life estate for the benefit of Grace P. Dunckel and the plaintiff, her husband, with respect to the premises conveyed.

The complaint, among other things, also asks that said deeds be delivered up and cancelled; that proof be taken of the amount paid by any defendant in payment of a mortgage, which was a lien upon said premises; that plaintiff have judgment for the sale of the premises and payment to him of the value of his life estate, and also of various moneys paid out at the request of the defendant Ruth Hollenbeck. It also asks that the defendants be restrained from making any conveyance or encumbering the aforesaid property, and that a receiver of the property be appointed.

In or about the year 1933, Grace P. Peckham married the plaintiff. Before her marriage to the plaintiff she became

possessed of the property in question by the will of her mother. The defendant, Ruth Hollenbeck, lived in said premises with her grandparents and thereafter with her aunt, Grace P. Dunckel. From the time she was an infant these premises were her home.

In 1937 or 1938, the plaintiff and his wife (Grace P. Dunckel) bought a home at Fort Plain, New York. In May, 1941, while said plaintiff and his wife were living at Fort Plain, his wife suffered a serious fall and was hospitalized at the Cooperstown Hospital, Cooperstown, New York. Due to this illness the plaintiff and his wife became involved in serious financial troubles. At this time the defendant, Ruth Hollenbeck, was teaching in Cooperstown and visited her aunt, Grace P. Dunckel, at the hospital. While in the hospital the aunt informed Ruth Hollenbeck that she and the plaintiff were about to lose their Fort Plain property and she was worried about having a place where she could go. She then asked the defendant, Ruth Hollenbeck, to take over the Bainbridge house and informed her that she would pay rent for it. She also told Ruth Hollenbeck that she was having a lawyer transfer the Bainbridge house to her, because the Bainbridge property was also in serious danger of being lost. The Dunckels lost their home at Fort Plain.

On July 9, 1941, Grace P. Dunckel and the plaintiff conveyed the premises in question to the defendant, Ruth Hollenbeck, by a quitclaim deed. The plaintiff joined in the conveyance not as a tenant by the entirety, but as the holder of a tax deed dated November 2, 1935, which deed was executed and delivered to him by the Treasurer of Chenango County for the payment of delinquent taxes in the amount of $37.75, plus fees amounting to $2.42. There appears to be contradictory evidence over the source of the money derived for the redemption of the property for delinquent taxes. A niece of Grace P. Dunckel, Ethel McLave, states in her affidavit that at the request of her aunt, Grace P. Dunckel, she sent $45 as a loan for the redemption. However, the plaintiff states that said tax title was purchased with his own money.

At the time Grace P. Dunckel conveyed the property to Ruth Hollenbeck the premises in question were subject to a mortgage of $866.60, which together with interest amounted to $1,050, held by the Greenlawn Cemetery Association. After the conveyance Ruth Hollenbeck paid all interest due upon said mortgage and on or about February 28, 1948, the defendant Ruth Hollenbeck satisfied the amount of the mortgage remaining unpaid and also the accrued interest. The mortgage was then discharged. It appears in the proof that this property was

assessed for $1,500. The plaintiff in his complaint alleges that the fair and reasonable value of the premises in question is approximately $6,500. However, in 1948, when the defendant, Ruth Hollenbeck, brought a proceeding for an increase in the rent of a part of the building occupied by plaintiff, the plaintiff filed a statement that the full value of said property was $2,500. The defendant Hollenbeck conveyed the premises to the defendant, John A. Parsons, for the sum of $4,250 on the 28th day of February, 1948.

The defendant, Ruth Hollenbeck, also paid both the principal and interest due on a certain judgment recovered by the creditors of the plaintiff's wife and secured from the judgment creditors a reconveyance of the interest they had in the premises by virtue of a sheriff's deed dated May 25, 1940.

The defendant Hollenbeck not only collected and retained all the rents paid by other tenants in the premises, but also between November 1, 1941 and August 28, 1947, received at irregular intervals the monthly rent of $25 paid by plaintiff or his wife in cash or in kind. Further proof supporting sole title of the premises in the defendant Hollenbeck appears by the fact that she paid all fire insurance premiums, taxes, water rents and other charges assessed against the premises from the time of conveyance to her and also most all the repairs and improvements, together with the cost of heating, except certain items that were paid by the plaintiff, but which items were credited to him on the rent due. At the time rent payments were made by him there was a rent registration statement filed with the Office of Price Administration. That statement named Hollenbeck as landlord and plaintiff as tenant.

After the death of the plaintiff's wife friction developed between the plaintiff and Ruth Hollenbeck. An oral agreement was then entered into which continued his occupancy of a part of the premises upon a monthly rental of $25 until February 28, 1948, when the defendant conveyed said premises to the Parsons.

The plaintiff in his affidavit states at the time the deed was drawn, which conveyed the premises to the defendant, he instructed the attorney to reserve and except from said deed a life estate in the real property for himself and wife and states " I certainly believed that we were reserving a life estate in said property, otherwise I would not have signed, neither would my wife have signed." Dunckel himself was a real estate broker at the time. It is difficult to understand how the plaintiff's attorney could omit such a vital interest to his own client in the preparation of a deed. In order to reinforce the theory that

there was an understanding between the plaintiff, the plaintiff's wife and Ruth Hollenbeck, that he and his wife were to have a life estate in the premises upon the conveyance to the defendant, the plaintiff relies upon statements which appear in letters written to him by his wife when she was in the hospital. Said letters contain statements to the effect that if the conveyance were made to Ruth Hollenbeck they could live without relief; and that so long as she, the plaintiff's wife, had a roof over her head he would share it. The admissibility of such evidence is questionable.

It is the further contention of the plaintiff in order to support the fact that he had a life use in the premises that he and his wife, after the execution and delivery of the deed to Hollenbeck, spent about $1,500 of his own money for improvements on said property by making repairs to the second floor of said house in order to make said second floor suitable for tenants, and further that the money so furnished was never repaid to him or his wife by Ruth Hollenbeck. It is his contention that said obligations assumed by him and his wife were consistent with a life use and placed him in the position of a life tenant. This statement in the affidavit of the plaintiff appears to be inconsistent with the fact that the defendant Hollenbeck was required to pay the interest on the mortgage from the time of the conveyance until the sale to the Parsons in order to prevent a foreclosure upon the premises. It is also inconsistent with the fact that in 1935, it was necessary for his wife to borrow $350 from the husband of her niece in order to prevent a foreclosure of the property and also to require the payment by the same niece's husband of the sum of $308 for the first four weeks' hospital bill incurred by his wife's hospitalization, all of which money was never repaid to the husband of the niece.

The plaintiff also has stated in his affidavit that some time before the Parsons bought the property from the defendant Hollenbeck, one Mr. Wheat came to the premises to look through and at that time he informed Wheat that he had a life use and that he, Wheat, should be careful about how he sold the property. This statement is denied by Wheat who was a real estate broker engaged by Hollenbeck to sell the premises.

The main consideration to be given to this motion is to see if the documentary evidence presented by the plaintiff and the defendants has raised a question of fact. Courts are reluctant to grant a summary judgment where there is sufficient material evidence to present a triable issue of fact. The pleadings themselves might raise an issue; nevertheless, under the rule it is

necessary that affidavits be presented showing that there is such an issue and that such facts presented by affidavit may be refuted by documentary evidence. (3 Wait's New York Practice, p. 612; Rules Civ. Prac., rule 113.)

The plaintiff asks for a reformation of a written instrument which was prepared by his own attorney under his own instructions. The deed in question did not contain any reservations of a life use for the plaintiff and his wife. It is, therefore, incumbent upon him to show a plain mistake by satisfactory proofs. A written instrument deliberately prepared and executed is evidence of the highest character. Its contents are presumed to express the intention of the parties to it. To show otherwise requires clear, convincing and positive evidence. The proof must also show that what is alleged to have been omitted was contrary to the intentions of both parties and was omitted through mutual mistake. The plaintiff further had the burden of showing that if there were a mistake that it was not only made through his inadvertence and error when he and his wife executed said instrument, but also that the defendant Hollenbeck labored under a similar delusion. (*Nevius* v. *Dunlap,* 33 N. Y. 676, 680; *International Photo Recording Machines, Inc.,* v. *Microstat Corporation,* 269 App. Div. 485, 489.)

A careful scrutiny of the proof presented on this motion leads us to the conclusion that the plaintiff has failed to fulfill the requisites of the law for the reformation of a written instrument. The proof offered by him has so completely been controverted by the documentary proof of the defendant, Hollenbeck, that no triable issue of fact has been raised. The very texture of the plaintiff's proof is open to doubt. The uncertainty of the plaintiff's proof fell far short of meeting the requisites as expressed in *Lyman* v. *Utica Insurance Company* (17 Johns. 373, 377), which states: " It is not enough, in cases of this kind, to show the sense and intention of one of the parties to the contract; it must be shown, incontrovertibly, that the sense and intention of the other party concurred in it; in other words, it must be proved, that they both understood the contract, as it is alleged it ought to have been, and as in fact it was, but for the mistake. It would be the height of injustice to alter a contract, on the ground of mistake, where the mistake arises from misconception by one of the parties, in consequence of his imperfect explanation of his intentions. To make a contract, it is requisite that the minds of the contracting parties agree on the act to be done; if one party agrees to a contract under particular modifications, and the other party agrees to it under different modifications, it is

evident there is no contract between them. If it be clearly shown, that the intention of one of the parties is mistaken and misrepresented by the written contract, that cannot avail, unless it further be shown, that the other party agreed to it in the same way, and that the intention of both of them was, by mistake, misrepresented by the written contract.''

In view of the proof presented on this motion, we are of the opinion that the order and judgment should be affirmed.

HILL, P. J., HEFFERNAN, BREWSTER and FOSTER, JJ., concur.

Order and judgment affirmed, with costs.