Matthew M. Levy, J.
The plaintiff, landlord of certain premises in New York City, leased the same to the corporate defendant, by written instrument, the performance of which was *571 guaranteed in writing by the individual defendant, the president of the corporate defendant. The lease was entered into on October 29,1954, for a term expiring December 31,1964. After some litigation between the parties, and on March 27, 1959, an instrument of amendment was executed which involved a rental adjustment. The lease contained a provision for its cancellation, under paragraph 23 thereof, in the event of the sale of the premises. The lessor did so cancel, when it sold the premises on May 26, 1961.
By the terms of the lease, the lessee agreed to pay all real estate taxes levied upon the premises by the city during the rental period. Such taxes in the total amount of $9,917 were duly levied for the fiscal year 1960-1961. The lessee paid $3,000 on account thereof and did not pay the balance, which the plaintiff did pay. By this action the plaintiff seeks to recover that balance with interest and costs. Before me for disposition is a motion by the plaintiff for summary judgment in its favor (Rules Civ. Prac., rule 113).
The denials contained in the separate answers of the defendants (interposed by the same attorney) do not truly raise a substantive issue. An analytical statement as to several of the affirmative matters pleaded by the defendants is, however, required. The lessee interposes two defenses, the first of which is also alleged as a counterclaim. The guarantor interposes four defenses and a counterclaim. The lessee’s first defense and counterclaim (also interposed by the individual defendant as his fourth defense and counterclaim) seek in substance reformation of the lease, and specifically of the instrument of amendment dated March 27,1959, upon the ground of mutual mistake. In the corporate defendant’s second defense (also set forth by the guarantor as his third defense), it is alleged that there is an adverse claim by the purchaser of the property to the sum sought to be recovered by the plaintiff. The individual defendant’s first defense pleads the alleged failure of the plaintiff to comply with article 23 of the lease in canceling it on May 26, 1961, resulting in his discharge as guarantor. His second defense likewise claims discharge as guarantor for a failure to give notice of the corporate defendant’s default until many months after it occurred. The third and fourth defenses of the guarantor (the latter including a counterclaim) are, as I have said, identical with the second and first defenses (the latter including a counterclaim of the corporate defendant).
The claim of the defendants as set forth in the first defense of the lessee and the fourth defense of the guarantor (and pleaded as a counterclaim by each) — that they are entitled *572 to reformation of the amendment to the lease because of mutual mistake — is based upon the following allegations: In an action in the City Court of City of New York, brought by the plaintiff as lessor against the defendants as lessee and guarantor respectively, for rent, they interposed a counterclaim in an amount exceeding $30,000, based on fraudulent misrepresentation by the plaintiff to induce the defendants to enter into the lease and guaranty. The counterclaim was compromised for $9,400, and the action was settled, during trial. The stipulation of settlement entered on the record in the City 'Court, provided for the modification of the lease “ by reducing the rent for the first four (4) years of the term to the extent of one thousand ($1,000) dollars for each year, a total of four thousand ($4,000) dollars and by reducing the rent for the remaining six years of the term by nine hundred ($900) dollars per year. The rent reduction for the first four years will automatically wash out any arrears upon which the complaint [in the City Court] was based. The reduction for the remaining six years of the term will be applied at the rate of seventy-five ($75) dollars per month against the current rent, the current credit to be applied against the rent next due ”. The stipulation further provided that the “ parties will prepare a formal modification of the lease to reflect the terms of the stipulation; and the individual defendant will execute an acknowledgment and reaffirmance of his guarantee of the lease as modified; and as so modified with the reduction of seventy-five ($75) dollars per month, the entire lease dated October 29, 1954, between the parties shall be affirmed in all respects.” Thereafter a formal modification of the lease was entered into dated March 27, 1959, wherein the plaintiff waived its right to $4,000 arrears in rent, and the net rent was reduced to $725 per month (the former rent was $800 per month) “ until the expiration or earlier termination of said lease ’ ’. The defendants now claim that the instrument of modification was executed by mutual mistake in that they believed that the lessee would, notwithstanding any earlier proper termination of the lease,- receive the benefit of the $9,400, the full amount of the settlement. And, since the instrument of amendment provides merely for a rent reduction, without indicating that a total fixed sum was to be paid upon termination of the lease by the cancellation thereof, the defendants seek judgment reforming that instrument by reason of the alleged mutual mistake.
If the defendants have presented an arguable factual case for reformation, the plaintiff must be denied summary judgment sought on the basis of the instruments as they now read. If the defendants have not submitted a substantive — as distin *573 guished from an insubstantial — case in this respect, this ground for defeating the plaintiff’s application must be rejected (Barrett v. Jacobs, 255 N. Y. 520, 521).
It will be helpful, therefore, to restate the principles of law applicable to a plea for reformation: “ [B] efore reformation can be granted the plaintiff ‘ must establish his right to such relief by clear, positive and convincing evidence (emphasis in original). Reformation may not be granted upon a probability nor even upon a mere preponderance of evidence, but only upon a certainty of error ’.” (Ross v. Food Specialties, 6 N Y 2d 336, 341, quoting from Amend v. Hurley, 293 N. Y. 587, 595.) In Dunckel v. Parsons (274 App. Div. 539, 544, appeal dismissed 301 N. Y. 572) we read: “ A written instrument deliberately prepared and executed is evidence of the highest character. Its contents are presumed to express the intention of the parties to it. To show otherwise requires clear, convincing and positive evidence. The proof must also show that what is alleged to have been omitted was contrary to the intentions of both parties and was omitted through mutual mistake. The plaintiff [who sought reformation] further had the burden of showing that if there were a mistake that it was not only made through his inadvertence and error when he and his wife executed said instrument, but also that the defendant * * * labored under a similar delusion.”
Moreover, as stated recently in Ross v. Food Specialties (6 N Y 2d 336, 341, supra): ‘‘ Reformation is not designed for the purpose of remaking the contract agreed upon but, rather, solely for the purpose of stating correctly a mutual mistake shared by both parties to the contract; in other words, it provides an equitable remedy for use when it clearly and convincingly appears that the contract, as written, does not embody the true agreement as mutually intended.” Nor may the plaintiff ‘ ‘ secure reformation merely upon a showing that he or his attorney made a mistake. In the absence of fraud, the mistake shown ‘ must be one made by both parties to the agreement so that the intentions of neither are expressed in it (Amend v. Hurley, 293 N. Y. 587, 595, supra, quoting from Salomon v. North British & M. Ins. Co., 215 N. Y. 214, 219.) And, in the Amend case, at page 595, in dismissing a counterclaim for reformation of a contract, the court noted: “ Defendant was a business man of experience and competence and adept in the understanding and use of the English language. Not to have read the contract or to have had it read to him before signing, if that be a fact as he testified, furnishes no basis for his repudiation of any of its terms
*574 I recognize, as urged by the defendants, that these cases involved dispositions after trial, and not motions for summary judgment — and that in the latter case the issue is merely whether an issue entitling the defendant to a trial has been raised (Thorp v. Pittsburgh Bicentennial Assn., 22 Misc 2d 233, 234). But, if rule 113 is to have any meaning at all in situations of this kind, it seems to me that the courts cannot permit every naked allegation of mistake by one seeking reformation — however deficient the proof, however unsupported the claim, however belated the assertion — to justify a denial of the motion.
A careful analysis of the defendants’ proof presented on this motion can lead to but one conclusion — that they have failed to fulfill the requisites of the law for the reformation of the contract. The instrument sued upon was based upon a formal stipulation entered into in open court, after considerable litigious controversy and was incorporated in a formal document after careful preparation. The defendants were, at the time, represented by attorney and,-indeed, the individual defendant — who is, as I have earlier noted, the president of the corporate defendant — is himself a counselor-at-law. And there is no proof that the parties had agreed to what the defendants now claim the contract should have stated. There is nothing in the stipulation to warrant the claim that the parties had agreed that the lessee would be entitled to $9,400, in lump sum, notwithstanding the earlier expiration of the lease. There is no semblance of proof that the plaintiff made any mistake in respect of the agreements entered into.
To deny summary judgment on the ground that the defendants are entitled to a trial of their counterclaim in that respect would, upon the proof presented now, be but an idle gesture — for in my view, the trial could not but inevitably result in a dismissal of the counterclaim on the merits. It is significant that the stipulation expressly referred to the lump sum $4,000, but not to the claimed $9,400 lump sum. On a motion for summary judgment, “ [i] t is incumbent on the court * * * to search the proof, * * * as proffered by affidavits or otherwise, to ascertain whether it discloses a real issue, rather than a formal, perfunctory, or shadowy one ” (Di Sabato v. Soffes, 9 A D 2d 297, 300). That I have carefully done, and I find no genuine issue raised by the defendants on this point.
The further issue raised by the individual defendant, embodied in his first defense, is that he was discharged as guarantor of the obligations of the lessee under the lease. This defense is based on the alleged failure of plaintiff to comply with article 23 of the lease in terminating it on May 26, 1961. That clause, *575 in substance, provided that the lessor had the right to cancel the lease upon a sale of the property, the lessor being required to submit to the lessee “ evidence ” of the offer of the proposed purchase and to offer to sell the premises to the lessee upon the same terms and conditions. The lease then further provided that the lessee had 30 days within which to accept or reject the offer, and that, if the lessee failed so to accept, the lessor might cancel the lease upon the sale to the outside purchaser and upon 120 days’ notice to the lessee. This defendant alleges that the documents submitted by the lessor to the lessee, in compliance with paragraph 23, were inadequate “ evidence ” of the proposed sale, and that therefore he, the guarantor, was discharged of his obligation as such.
In my view, this defense is quite meritless. The real estate taxes for the fiscal year 1960-1961, became due and payable in two installments — one half on October 1, 1960, and the remaining half on April 1, 1961 — prior to the giving of the 120-day notice of cancellation on May 26, 1961. The defaults of the lessee for the nonpayment of the taxes occurred on October 1, 1960, and April 1, 1961, of which defaults the guarantor personally and as president of the corporate obligor received oral and written notice; and, indeed, it is not disputed that, with the guarantor’s knowledge and participation, his company paid the plaintiff $3,000 on account of the taxes. On the undisputed facts, therefore, since the default in the payment of taxes was long before the notice of cancellation, whatever the inadequacy of the prospective effect of the prior notice as a compliance with article 23 in respect of evidence of a future sale, that did not alter or affect the pre-existing fixed liability of the individual defendant arising out of the known defaults of which he was duly notified.
Moreover, the matters alleged in this defense were heretofore resolved by a final judgment of the Supreme Court, First Judicial District, entered July 7, 1960, and affirmed by the Appellate Division of the Supreme Court, First Department, on February 28,1961 (12 AD 2d 925). The action resulting in that judgment was brought by S. H. Kress and Company, the plaintiff herein, against Fine, the purchaser, and the two defendants herein. In that action the plaintiff sought specific performance of the contract of sale of the premises to Fine, as well as a declaration that the plaintiff had complied with the provisions of paragraph 23 of the lease with respect to cancellation thereof, and that, consequently, the defendant corporation no longer had an option to purchase the premises, and that the plaintiff could cancel the lease. The present lessee interposed a counterclaim therein, *576 setting forth precisely the same allegations as' are now alleged by the guarantor in his first defense herein. The plaintiff moved for summary judgment, and the individual defendant made an affidavit as president of the lessee corporation, in opposition to the plaintiff’s motion. The application was granted as against Fine and the lessee and judgment was duly entered in the plaintiff’s favor. It was adjudged by that decree that the plaintiff, as required by paragraph 23 of the lease, “ submitted evidence ” to the lessee of Fine’s offer to purchase the property, that the lessee did not — within the 30-day period allowed— accept the plaintiff’s offer, that the lessee’s option to purchase was extinguished, and that the plaintiff might sell the premises to Fine free of any claim by the lessee to purchase.
It appears that, at the time the motion for summary judgment was granted in that action as stated, the suit was severed as to the individual defendant therein and herein, the guarantor, and judgment was not entered against him. By virtue of that severance, that defendant contends before me that the judgment therein is innocuous, so far as affecting his present defense is concerned. I do not agree.
The individual defendant, as I have noted, is the president of the corporate defendant against whom the judgment was entered. He is its principal stockholder and its active manager. He made and submitted an affidavit opposing the summary declaratory judgment applied for by the plaintiff. In the circumstances, I hold that, under the principle of collateral estoppel, the individual defendant cannot relitigate anew the issue he unsuccessfully sought to project in behalf of his company in the prior litigation between the plaintiff and that company.
Collateral estoppel is a facet of res judicata (Matter of Shea, 309 N. Y. 605, 617; Caterpillar Tractor Co. v. International Harvester Co., 120 F. 2d 82, 84). Where the ultimate controlling-issue has been decided in a prior proceeding or in which proceeding the party had an opportunity to assert his rights, the determination therein is dispositive of such issue (Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U. S. 89; Lawlor v. National Screen Serv. Corp., 349 U. S. 322; see, also, Israel v. Wood Dolson Co., 1 N Y 2d 116). “ The doctrine of collateral estoppel ‘ is essentially a rule of justice and fairness and the essence of the rule is 1 that a question once tried out should not be relitigated between the same parties or their privies ’ (Commissioners of State Ins. Fund v. Low, 3 N Y 2d 590, 595) ” (Hinchey v. Sellers, 7 N Y 2d 287, 294). Whether or not the individual defendant was, in the truly etymological meaning of the term, a “ privy ” of the corporate defendant (which *577 undoubtedly was a “party”), it is my view that their relationship is such and the situation is such in the case at bar that it would be ignoring the substance of the facts so to circumscribe that meaning now as to render it meaningless.
In so holding, I am not to be taken as a protagonist of that school of thought which supports the thesis which Humpty Dumpty, “ in a rather scornful tone, ’ ’ expressed so dogmatically to Alice: “ When I use a word it means just what I choose it to mean ” (Carroll, “ Through the Looking Glass,” ch. 6). What I do mean to say is that the word “ privy ” in this context has itself been judicially imported into our law, and that I do not consider it to be a mechanical word of art, semantically and legalistically to be necessarily restrictively applied, whatever the facts in the particular case may be (cf. Ostapenko v. Fuller Co., 27 Misc 2d 93, affd. 13 A D 2d 650, affd. 11 N Y 2d 782).
The second defense of the individual defendant likewise is of no substance. The essence of this defense is that the guaranty required notice to the guarantor of any default by the former and that the plaintiff did not give such notice of default in respect of the payment of the taxes or make any demand or payment until on or about May 19, 1961, which would make the required notice long overdue — and that, by reason thereof, the individual defendant was discharged as guarantor. But, the proof on this motion undeniably and overwhelmingly establishes that due oral and written notice was given to this defendant within due time in reference to each default. As I read the papers before me, this defense is specious and does not warrant a trial.
I hold also that no triable issue is raised by the second defense of the lessee, which is identical to the third defense of the guarantor. In substance, that defense is grounded upon the allegation that there is a claim by the purchaser of the property for the real estate taxes sued for by the lessor-vendor and that, therefore, the purchaser is a necessary party to the action. However, in support of its motion for summary judgment, the plaintiff has annexed the affidavit of the purchaser disclaiming any interest in the taxes, and acknowledging that any moneys recovered herein for such are the plaintiff’s property to which only the plaintiff is entitled. That, of course, disposes of this asserted issue adversely to the defendants.
Summary judgment is granted to the plaintiff, as prayed for in its notice of motion.